UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROGER BARRY, | § | |
| | § | |
| Plaintiff, | § | |
| vs. | § | CIVIL ACTION NO. 4:14-cv-00870 |
| | § | |
| ALLSTATE TEXAS LLOYDS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

**I.   INTRODUCTION**

Pending before the Court is the defendants', Allstate Texas Lloyd's ("Allstate") and Trevor Linhart ("Linhart") (collectively, the "defendants"), motion for summary judgment. (Dkt. No. 10). The plaintiff, Roger Barry (the "plaintiff"), has filed a response in opposition to the defendants' motion for summary judgment (Dkt. No. 16) as well as a sur-reply (Dkt. No. 18). The defendants have filed a reply (Dkt. No. 17), and supplemental motion for summary judgment, (Dkt. No. 27), to which the plaintiff has also filed a response. (Dkt. No. 30). After having carefully considered the motion, responses, replies, the undisputed facts, the record and the applicable law, the Court determines that the defendants' motion for summary judgment should be **GRANTED**.

**II.   FACTUAL BACKGROUND**

This case arises out of the plaintiff's claim for windstorm damages to his residential property. The plaintiff, a Texas resident, is the owner of Texas HO-A-Plus Homeowners Policy No. 216556153 (the "Policy"), issued by Allstate, insuring certain real property located at 3361 Masters Drive, Montgomery, Texas 77356 (the "property"). On or about January 9, 2012, the property sustained roof and interior damage due to high winds and hail throughout the

Montgomery County area. As a result of the high winds, several trees reportedly punctured the plaintiff's roof and caused water damage to his garage ceiling as well as the interior of the property. On February 13, 2012, the plaintiff filed a claim with Allstate, alleging roof and interior damages as a result of the events that occurred on January 9, 2012. On or about February 21, 2012, Allstate and its adjuster, Linhart, inspected the property and adjusted the loss. On February 27, 2012, Allstate initially closed the plaintiff's claim without payment, determining that the damages sustained did not exceed the applicable $2,620 deductible. Notably, however, the estimate included in Allstate's initial report represented the property's total roof size as being 11.46 squares as opposed to over 42 squares. On March 18, 2012, upon the plaintiff's disagreement with the defendants' initial valuation, Allstate re-inspected the property and prepared an estimate for $5,409.80, representing the replacement value of the left slope of the roof. On or about March 26, 2012, after applying a $2,620 deductible, Allstate rendered payment to the plaintiff in the amount of $2,789.80.

On or about April 24, 2012, the plaintiff again requested a re-inspection of the property. Allstate responded that it had already conducted two prior inspections and needed a contractor estimate before reassessing whether another inspection of the property would be warranted. On May 3, 2012, the plaintiff's contractor, A+ Precision, provided an estimate for $17,064.89, which was later revised to include a total estimate of $17,407.76. Allstate initially denied the plaintiff's supplemental claim, asserting that the estimate included excessive charges for items it had already paid for. Nevertheless, on July 31, 2012, Allstate re-inspected the property and permitted minor damage repairs to the back slope and ceiling from a leak in the master bedroom of the property. Based on a revised estimate in the amount of $6,146.92, Allstate, on August 3, 2012, paid $737.12 to the plaintiff.

On May 3, 2013, Allstate invoked the appraisal clause under the Policy[1] and appointed Richard Sukolics as its appraiser. The plaintiff, however, initially failed to respond to Allstate's appraisal demand so, on July 19, 2013, Allstate again demanded appraisal. The plaintiff, thereafter, selected Stephen Medeiros as his appraiser. On or about January 7, 2014, Allstate received the final executed appraisal award representing a replacement cash value in the amount of $30,050.67 and an actual cash value in the amount of $27,114.10. On February 3, 2014, Allstate paid $16,967.18 to the plaintiff, which represented the actual cash value under the appraisal award minus the deductible and prior payments, to be held in trust until the plaintiff executed the negotiated release. After the plaintiff refused to execute the release upon Allstate's request, the plaintiff cashed the check. Upon receipt of the roof repair payment confirmation in the amount of $28,505.67, Allstate paid $6,936.57 in recoverable depreciation to the plaintiff.

On February 20, 2014, after issuance of the appraisal award and Allstate's payments of recoverable depreciation, the plaintiff commenced the instant action against the defendants in the

---

[1] The Policy's appraisal provision, provides, in relevant part, as follows:

> **7. Appraisal.** If you and we fail to agree on the actual cash value, amount of loss or the cost of repair, either can make a written demand for appraisal. Each will then select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a district court of a judicial district where the loss occurred. The two appraisers will then set the amount of loss, stating separately the actual cash value and loss to each item.
>
> If the appraisers fail to agree, they will submit their differences to the umpire. An itemized decision agreed to by any two of these three and filed with us will set the amount of loss. Such award shall be binding on you and us.
>
> Each party will pay its own appraiser and bear the other expenses of the appraisal and umpire equally.

(Dkt. No. 10, Ex. C at 11 - 12).

410th Judicial District Court of Montgomery County, Texas. On April 3, 2014, Allstate timely removed the action to this Court on the basis of diversity jurisdiction.[2]

### III. SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to the party's case and on which that party bears the burden at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant bears the initial burden of "informing the district court of the basis for its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *see also Martinez v. Schlumber, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995); *Little*, 37 F.3d at 1075). "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'" *Stults*, 76 F.3d at 656 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S. Ct. 195, 130 L. Ed.2d 127 (1994)). It may not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at

---

[2] Allstate's removal is timely as it was served with the plaintiff's petition on March 5, 2014.

1075 (internal quotation marks and citations omitted). Instead, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Intern.*, 343 F.3d 401, 405 (5th Cir. 2003) (citing *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998)).

"A fact is material only if its resolution would affect the outcome of the action, . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the [nonmovant].'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted). When determining whether a genuine issue of material fact has been established, a reviewing court is required to construe "all facts and inferences . . . in the light most favorable to the [nonmovant]." *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)). Likewise, all "factual controversies [are to be resolved] in favor of the [nonmovant], but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Boudreaux*, 402 F.3d at 540 (citing *Little*, 37 F.3d at 1075 (emphasis omitted)). Nonetheless, a reviewing court is not permitted to "weigh the evidence or evaluate the credibility of witnesses." *Boudreaux*, 402 F.3d at 540 (quoting *Morris*, 144 F.3d at 380). Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Hous.*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 – 52 (1986)).

## IV. ANALYSIS AND DISCUSSION

### A. The Plaintiff's Breach of Contract Claim

As a threshold matter, the plaintiff asserts a breach of contract claim against Allstate premised on its failure and refusal to pay him benefits due under the Policy. (*See* Dkt. No. 1 at 6, ¶ 27). Specifically, the plaintiff maintains that instead of paying for reasonably clear damages to his property, Allstate undervalued and underpaid his claim. (*Id.* at 6, ¶ 28). Nevertheless, "Texas courts have long held that appraisal awards made pursuant to the provisions of an insurance contract are binding and enforceable, and every reasonable presumption will be indulged to sustain an appraisal award." *Franco v. Slavonic Mut. Fire Ins. Ass'n*, 154 S.W.3d 777, 786 (Tex. App.–Houston [14 Dist.] 2004) (citing *Providence Lloyds Ins. Co. v. Crystal City Indep. Sch. Dist.*, 877 S.W.2d 872, 875 (Tex. App. -San Antonio 1994, no writ)). "Under Texas law, when an insurer makes timely payment of a binding and enforceable appraisal award, and the insured accepts the payment, the insured is 'estopped by the appraisal award from maintaining a breach of contract claim against [the insurer]." *Blum's Furniture Co., Inc. v. Certain Underwriters at Lloyds London*, No. 11-20221, 2012 WL 181413, *2 (5th Cir. Jan. 24, 2012) (quoting *Franco*, 154 S.W.3d at 787); *see also Breshears v. State Farm Lloyd's*, 155 S.W.3d 340, 343 (Tex. App.-Corpus Christi 2004, no pet.) (the insured "may not use the fact that the appraisal award was different than the amount originally paid as evidence of breach of contract, especially when the contract [he] claim[s] is being breached provides for resolution of disputes through appraisal").

Here, in the absence of evidence raising a genuine issue of fact as to a ground for setting aside the appraisal award in this case, the plaintiff, having accepted payment of the appraisal award minus any applicable offsets, is estopped from pursuing a breach of contract claim against

Allstate. The plaintiff has failed to introduce evidence indicating that he has not been adequately compensated. Indeed, the uncontroverted evidence in the record establishes that Allstate invoked the appraisal clause under the Policy and the parties submitted to appraisal, each appointing their own appraiser. On December 18, 2013 and December 23, 2013, the appraisers agreed on the amount of loss and executed an appraisal award with a replacement cash value of $30,050.67. On or about January 7, 2014, Allstate's counsel received the final, executed appraisal award. Thereafter, the parties negotiated the terms of a release. On February 3, 2014, Allstate tendered a draft release and payment to the plaintiff pursuant to the appraisal award in the amount of $16,967.18, which represented the actual cash value under the appraisal award minus any applicable deductible and prior payments. Upon receipt of the roof repair payment confirmation, Allstate paid $6,936.57 in recoverable depreciation to the plaintiff. The plaintiff accepted timely payment of the binding and enforceable appraisal award minus offsets from Allstate and, thus, is estopped from maintaining a breach of contract claim against it. *See Devonshire Real Estate & Asset Mgmt., LP v. Am. Ins. Co.*, No. 3:12-CV-2199-B, 2014 WL 4796967, *15 (N.D. Tex. Sept. 26, 2014) (citing *Scalise v. Allstate Texas Lloyds*, No. 7:13–CV–178, 2013 WL 6835248, at *5 (S.D. Tex. Dec. 20, 2013) ("Under Texas insurance law, however, 'where the parties disagree on the amount of loss and submit to the contractual appraisal process to resolve that dispute, and the insurer pays all covered damages determined by the award, the insured may not then argue that the initial failure to pay those damages equates to a breach of the contract.'"). As a consequence, Allstate is entitled to judgment as a matter of law on the plaintiff's breach of contract claim.

  **B.**  **The Plaintiff's Extra-Contractual Claims**

In addition to his breach of contract claim against Allstate, the plaintiff asserts claims against the defendants for common-law fraud, common-law and statutory bad faith, unfair

settlement practices in violation of Tex. Ins. Code § 541.151 and violation of the prompt payment provisions of Tex. Ins. Code § 542.[3]  Generally, however, an insured is precluded from maintaining a bad faith claim where his breach of contract claim fails.  *See Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995); *Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 629 (Tex. 1996); *see also Blum's*, 2012 WL 181413 at *3.  The only two recognized exceptions to this general rule are when the insurer "commit[s] some act, so extreme, that would cause injury independent of the policy claim," or fails "to timely investigate the insured's claim." *Stoker*, 903 S.W.2d at 341.

In this case, the plaintiff has not presented sufficient evidence to raise a genuine issue of material fact on either of these exceptions, as there is no evidence that Allstate's conduct was so extreme that it caused injury to the plaintiff separate and apart from the mere failure to render amounts due under the terms of the Policy.  The insured's payment of consequential legal fees and/or appraisal expenses will not suffice to support such an independent injury.  *See Admiral Ins. Co. v. Patron Energy, Inc.*, 2004 WL 798374, *2 (N.D. Tex. Feb. 28, 2014) (reasoning that an insured's payment of legal fees and increased litigation expenses in a coverage dispute with its insurer did not constitute independent injury required for unfair settlement practices claim).  Nor does the alleged mis-measurement of the roof in this case, without more, give rise to an "act, so extreme, that would cause [an] injury independent of the policy claim."  In fact, the Fifth Circuit, in *Mid-Continent Cas. Co. v. Eland Energy, Inc.*, observed the rarity with which Texas courts have applied the *Stoker* "extreme act" exception, reasoning that "[t]he *Stoker* language has frequently been discussed, but in seventeen years since the decision appeared, no Texas Court

---

[3] The plaintiff's petition, while not a model of clarity, appears to only allege claims for unfair settlement practices and fraud against Linhart.

has yet held that recovery is available for an insurer's extreme act, causing injury independent of the policy claim." 709 F.3d 515, 521 (5th Cir. 2013).

Additionally, no evidence has been adduced establishing that the defendants failed to conduct a timely investigation of the plaintiff's claim. The record before this Court establishes that the defendants received notice of the plaintiff's claim on February 13, 2012, and commenced their investigation eight days later, on February 21, 2012, when Allstate sent an adjuster to inspect the plaintiff's property. After the plaintiff notified Allstate of his disagreement with the valuation of his claim and underpayment of his loss, Allstate inspected the property twice more and paid a total of $3,526.92. On May 3, 2013, Allstate invoked the Policy's appraisal provision, which allowed either party to request that a dispute as to the amount of damages be submitted to appraisers. On December 18, 2013 and December 23, 2013, the appraisers, appointed by each side, agreed on the amount of the loss and executed an appraisal award with a replacement cash value of $30,050.67. On or about January 7, 2014, Allstate's counsel received the final, executed appraisal award. On February 3, 2014, Allstate tendered payment pursuant to the appraisal award in the amount of $16,967.18, which represented the actual cash value under the appraisal award minus any applicable deductibles and prior payments. Upon receipt of the roof repair payment confirmation, Allstate also paid $6,936.57 in recoverable depreciation to the plaintiff. The plaintiff accepted the amount paid to him by Allstate in accordance with the appraisal award. Indeed, based on the evidence presented, the plaintiff has failed to raise a genuine issue of material fact regarding his bad faith claims against the defendants. *See Hernandez v. Allstate Texas Lloyds*, No. 7:12-CV-480, 2014 WL 903130, *7, (Feb. 7, 2014) (citing *Blum's*, 2012 WL 181413 at *3) (reasoning that "a plaintiff 'cannot maintain an action for bad faith where the breach of contract claim fails, and neither exception applies").

Likewise, the plaintiff has failed to establish that the defendants violated any of the applicable statutory provisions. Under Texas law, "extra-contractual tort claims pursuant to the Texas Insurance Code and the DTPA require the same predicate for recovery as bad faith causes of action." *Douglas v. State Farm Lloyds*, 37 F. Supp.2d 532, 544 (S.D. Tex. 1999) (quoting *Lawson v. Potomac Ins. Co.*, No. Civ. 3:98–CV–0692H, 1998 WL 641809, at *4 (N.D. Tex. Sept. 14, 1998) (citing *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 460 (5th Cir. 1997)); *see also Texas Mut. Ins. Co. v. Sara Care Child Care Ctr., Inc.*, 324 S.W.3d 305, 317 (Tex. App.-El Paso 2010, review denied). Hence, "when an insured joins claims under the Texas Insurance Code and the DTPA with a bad faith claim, all asserting a wrongful denial of policy benefits, if there is no merit to the bad faith claim, there can be no liability on either of the statutory claims." *Douglas*, 37 F. Supp.2d at 544 (citing *Higginbotham*, 103 F.3d at 460) (other citations omitted). Accordingly, here, the plaintiff's statutory claims fail for the same reasons as his bad faith claims.

Further, the plaintiff contends that Allstate violated the prompt payment provisions of the Texas Insurance Code. Under Texas law, however, the "full and timely payment of an appraisal award under the policy precludes an award of penalties under the Insurance Code's prompt payment provisions as a matter of law." *In re Slavonic Mut. Fire Ins. Ass'n*, 308 S.W.3d 556, 563 – 64 (Tex. App. – Houston [14th Dist.] 2010); *see also Amine v. Liberty Lloyds of Tex. Ins. Co.,* No. 01–06–00396–CV, 2007 WL 2264477, *4 (Tex. App.-Houston [1st. Dist.] Aug. 9, 2007, no pet.) (holding that "where insurer makes timely payment pursuant to an appraisal award, there is no violation of the code's prompt payment deadlines"). Since Allstate made the full and timely payment of the appraisal award minus any applicable offsets to the plaintiff upon

the award's issuance, the defendants are entitled to judgment as a matter of law on the plaintiff's claim for violation of the prompt payment provisions of the Texas Insurance Code.

Finally, the plaintiff asserts a claim for common-law fraud against the defendants, alleging that they knowingly or recklessly made false representations as to material facts and/or knowingly concealed all or part of material information from him with the intent of inducing him to accept an underpayment of insurance benefits. (*See* Dkt. No. 1 at 11, ¶ 48). The plaintiff maintains that the defendants misrepresented the size of his roof in all of its estimates prior to demanding appraisal. (*Id.*) In accordance with Texas law, in order to survive a motion for summary judgment on his claim for common law fraud, the plaintiff must demonstrate a genuine issue of material fact as to the following elements: "(1) the defendant[s] made a representation to [him]; (2) the representation was material; (3) the representation was false; (4) when the defendant[s] made the representation the defendant[s] knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant[s] made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury." *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032 – 33 (5th Cir. 2010) (citing *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)).

In the case *sub judice*, the plaintiff has failed to satisfy his burden on his common-law fraud claim, as he has failed to demonstrate that the defendants knowingly made material misrepresentations and/or knowingly concealed material information concerning the Policy's coverage or Allstate's investigation of the plaintiff's claim. "Evidence that merely shows a bona fide dispute about the insurer's liability on the contract [will not suffice as it] does not rise to the

level of bad faith." *Lee v. Catlin Specialty Ins. Co.*, 766 F. Supp.2d 812, 818 (S.D. Tex. 2011) (citing *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 17 (Tex. 1994)). Further, the plaintiff cannot establish that he relied to his detriment on any alleged misrepresentations made by Allstate and/or Linhart, in light of his numerous challenges to the defendants' valuations relative to the property. *See Mason v. Texas Farmers Ins. Co.*, Civil Action No. H–09–3134, 2011 WL 3702376, *5 (S.D. Tex. Aug. 23, 2011) (granting summary judgment on common-law fraud claim for failure to show reliance where the plaintiffs disputed the accuracy of the insurer's estimate); *see also Mayes v. Stewart*, 11 S.W.3d 440, 451 (Tex. App.- Houston [14 Dist.] 2000, pet. denied) (quoting *Bynum v. Signal Ins. Co.*, 522 S.W.2d 696, 700 (Tex. App.-Dallas 1975, writ ref'd n.r.e.) ("If the person to whom a false representation is made is aware of the truth, it is obvious that he is neither deceived nor defrauded, and, therefore, any loss he may sustain is not traceable to the representation but is self-inflicted.")). Accordingly, the defendants are entitled to a summary judgment on the plaintiff's common-law fraud claim.

V. **CONCLUSION**

Based on the foregoing analysis and discussion, the defendants' motion for summary judgment is **GRANTED**.

It is so **ORDERED**.

SIGNED on this 31st day of March, 2015.

_____
Kenneth M. Hoyt
United States District Judge